IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| **DEBRA SECKEL** | ) | |
| | ) | |
|     **PLAINTIFF** | ) | |
| | ) | |
| VS. | ) | CASE NO.: |
| | ) | |
| **DEPARTMENT STORES NATIONAL BANK** | ) | 4:15-cv-1164 |
| Serve at: | ) | |
| **Department Stores National Bank** | ) | |
| **701 E. 60th Street N** | ) | |
| **Sioux Falls, SD 57104** | ) | |
| | ) | |
|     **DEFENDANT** | ) | |

## COMPLAINT

1. The Telephone Consumer Protection Act, 47 U.S.C. §227(b) ("TCPA"), restricts the use of automated equipment and prerecorded voice messages to dial cellular telephones. Calls to cell phones using predictive dialing equipment are prohibited unless the caller or creditor has the "prior express consent" of the called party to make the automated calls.

2. At some point on or before March 1, 2014, defendant Department Stores National Bank (hereinafter referred to as "DSNB") began attempts to collect on plaintiff's debt by placing calls to plaintiff's cellular phone using either an automatic dialer or predictive dialer.

3. Plaintiff revoked any prior express consent by sending a certified letter dated March 1, 2014 and received by DSNB's representatives on March 6, 2014.

4. Subsequent to March 6, 2014, DSNB and its representatives continued to place calls to plaintiff's cellular phone using either an automatic dialer or predictive dialer.

5. The TCPA was designed to prevent calls like these, and to protect the privacy of citizens like plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

6. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer.  TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

Id. at § 12; see also *Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at* 4 (N.D.Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

7. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call…." Id. at §§ 12-13. See also, *Mims*, 132 S. Ct. at 744.

8. Defendants called plaintiff numerous times on her cellular telephone using predictive dialing equipment, even after plaintiff had revoked any prior express consent for those calls.

## VENUE AND JURISDICTION

9. This Court has jurisdiction of this claim pursuant to 42 U.S.C. § 227.

10. Venue and personal jurisdiction in this District are proper because Defendant's collection communications were received by plaintiff within the Eastern District of Missouri and defendant transacts business here.

## PARTIES AND PERSONAL JURISDICTION

10. Plaintiff Debra R. Seckel is a natural person, a citizen of the State of Missouri and residing in the County of St. Louis, State of Missouri.

11. Defendant Department Stores National Bank ("DSNB") is believed to be a national banking association operating from an address located at 701 E 60th Street N, Sioux Falls, South

Dakota, and doing business in the State of Missouri. DSNB solicits, advertises to and provides credit cards and financing to consumers residing in Missouri.

## FACTS

12. Plaintiff is, and at all relevant times was, a "person" as defined by 47 U.S.C § 153 (39).

13. Defendant is, and at all relevant times, was a "person" as defined by 47 U.S.C § 153 (39).

14. Plaintiff has had a cellular telephone with the same assigned phone number for years. She has only used this number as a cellular telephone number, and does not believe that it was ever ported from a wireline service.

15. At all relevant times, this cellular phone number has been assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls.

16. Plaintiff applied for a Macy's credit card with Defendant in the fall of 2009, and was issued a credit card by DSNB on October 15, 2009.

17. The application form which Plaintiff completed required plaintiff to provide a "house" phone number. Inasmuch as she had no house phone at the time, plaintiff provided her cellular phone number in the application.

18. Beginning in late 2013, plaintiff lost her job, and plaintiff's spouse saw a decrease in the number of hours he was receiving each week from his employer with the result being a significant decrease in household income which prevented plaintiff from being able to continue making the required payments on the Macy's/DSNB account.

19. In late January of 2014 Plaintiff received correspondence dated January 22, 2014 from Citicards indicating that it was servicing her Macy's account for DSNB, and requesting that she contact Citicards in order to make payment arrangements. The letter was signed by A. Powell, Senior Vice-President, Director of Collections. A true and accurate copy of this correspondence is attached hereto as Exhibit A.

20. Plaintiff received a second letter from Citicards in its capacity as the servicer for the DNSB account dated February 20, 2014. A true and accurate copy of this correspondence is attached hereto as Exhibit B.

21. On March 1, 2014, plaintiff sent a letter to Citicards, the servicer for DSNB's Macy's account, via certified mail wherein she demanded that it cease and desist from any and all forms of contact with her on this account. A true and accurate copy of this letter is attached hereto as Exhibit C.

22. Plaintiff monitored the delivery of the certified letter through the USPS website and the tracking number which was provided, and confirmed that the letter was delivered to DSNB on March 6, 2014.

23. Plaintiff's letter to DSNB's duly authorized agent and servicer, Citicards, dated March 1, 2014 revoked the consent she had previously given to DSNB and/or its agents and representatives to place calls to her cellular telephone number. Nevertheless, DSNB and its representatives continued to hound plaintiff by placing dozens of calls to plaintiff's cellular phone over the next 5 weeks.

## COUNT I – TCPA

22. Plaintiff incorporates all previous paragraphs.

23. After plaintiff revoked her consent on March 6, 2014, Defendant called Plaintiff's cell phone number an unknown number of times.

24. The industry standard for collection calls is to use automated dialers. Therefore, it is believed, and averred, that the calls made to Plaintiff's cell phone were made using either an automatic telephone dialing system or a predictive dialing system, as that term is defined in 47 U.S.C. § 227(a)(1).

25. These telephone calls were not made for "emergency purposes", as defined in 47 C.F.R. § 64.1200.

26. The telephone calls made after March 6, 2014 were not made with the plaintiff's prior express consent.

27. The FCC has previously discussed the terms willfully and knowingly with respect to the Act in an informal staff opinion.

28. In the informal opinion, the FCC has stated that "the term 'willful' has been interpreted to mean simply that 'the acts or omissions are committed knowingly. It is not pertinent whether or not the [. . .] acts or omissions are intended to violate the law." In addition, the FCC stated that the term "knowingly" is equivalent to "willful."

29. Once plaintiff sent the March 1, 2014 letter demanding that DSNB cease and desist from any and all forms of contact with her, she had revoked any alleged prior express consent, yet DSNB and its representatives continued to attempt to contact her on her cell phone using an automatic dialer or predictive dialer multiple times daily over the next 5 weeks.

30. As Defendant intended to place these post March 6, 2014 calls to plaintiff's cell phone when it knew or should have known that plaintiff had revoked any prior express consent, she is entitled to increased damages, as these calls were made willfully and/or knowingly.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and against defendants for:

    A. Statutory damages;

    B. An injunction against further violations;

    C. A declaration that defendant's equipment and messages are regulated by the TCPA;

    D. Costs of suit;

    E. Reasonable attorney's fees;

    F. Such other or further relief as the Court deems just and proper.

**HEALEY LAW, LLC**

/s/ Robert T. Healey
Robert T. Healey        No. 34138MO
Attorney at Law
640 Cepi Drive, Suite A
Chesterfield, MO 63005
Telephone:     (314) 401-3261
Fax:           (636) 590-2882
Email:         bob@healeylawllc.com